**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCY**
**PADUCAH DIVISION**
**CASE NO. 5:12-CR-00037**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.**

**ARVIN PRIESTLY** **DEFENDANT**

# MEMORANDUM OPINION AND ORDER

After a trial before the Magistrate Judge at Fort Campbell Army Base on August 1, 2012, Defendant Arvin Priestly ("Priestly") was convicted of driving under the influence, in violation of KRS § 189A.010. Priestly now appeals that conviction, arguing that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. (*See* Notice of Appeal, Docket Number ("DN") 1.) He has briefed his position and arguments. (Def.'s Br., DN 8.) The Government has responded. (Gov't Resp., DN 9.) The Defendant has not replied, and the time to do so has now expired. This matter is now ripe for adjudication. For the following reasons, the Defendant's conviction is **AFFIRMED**.

## I.

This Court has jurisdiction to hear this appeal pursuant to 18 U.S.C. § 3402, which provides for an appeal of right from the judgment of a magistrate judge, and 18 U.S.C. § 3231, which vests the Court will jurisdiction over all federal crimes. The Magistrate Judge properly exercised jurisdiction under 18 U.S.C. § 3401 and Local Criminal Rule 5.1. Although the circumstances leading to this appeal occurred at Fort Campbell, a federal installation, the Magistrate Judge applied Kentucky's substantive motor vehicle law pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13.

## II.

Priestly challenges his conviction based on the sufficiency of the evidence presented at trial. When reviewing based on the sufficiency of the evidence, an appellate court should not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *United States v. Blakeny*, 942 F.2d 1001, 1010 (6th Cir. 1991). It should be noted that "[a] defendant challenging the sufficiency of the evidence has a 'very heavy burden.'" *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (quoting *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002)).

In determining whether the evidence was sufficient to sustain a conviction of the crime charged, the court does "'not weigh the evidence, assess the credibility of witnesses, or substitute [its] judgment for that of the jury.'" *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001) (quoting *United States v. Wright*, 16, F.3d 1429, 1440 (6th Cir. 1994)). Instead, after a defendant has been convicted, "the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319. In reviewing whether there was sufficient evidence to sustain a conviction, a court "must draw all available inferences and resolve all issues of credibility in favor of the [factfinder's] verdict." *Salgado*, 250 F.3d at 446 (citing *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998)). "Circumstantial evidence is entitled to the same weight as direct evidence in determining whether there is

sufficient evidence to support a guilty verdict." *United States v. Baydoun*, 984 F.2d 175, 179 (6th Cir. 1993). "A judgment is reversed on insufficiency-of-the-evidence grounds 'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.'" *Gardner*, 488 F.3d at 710 (quoting *United States v. Barnett*, 398 F.3d, 516, 522 (6th Cir. 2005)). "[I]n cases tried by the court, factual findings made by the trial judge stand unless determined to be so clearly erroneous as to justify overturning the conviction." *Baydoun*, 984 F.2d at 179.

## III.

In the early morning hours of February 4, 2012, Priestly attempted to access Fort Campbell at Gate 7 on the Kentucky side of the Army base. (Trial Tr., DN 4, pp. 3:25-4:18, 6:8:11.) All vehicles entering the base are administratively stopped and their occupants must produce identification. (*Id.* at p. 4:23-25.) Additionally, every fifth vehicle is subject to an administrative search. (*Id.* at p. 4:13-21.)

On this particular occasion, gate guard Jimmy Mayes ("Mayes") was on duty at Gate 7 and stopped Priestly's vehicle. Prior to the stop Mayes did not observe Priestly speeding, swerving, or otherwise driving in an abnormal manner. (*Id.* at pp. 7:17-8-14.) Priestly was the only person in the vehicle at the time of the stop. (*Id.* at p. 6:5-7.) As Mayes checked Priestly's identification, he noticed Priestly's speech was slurred and his breath smelled of alcohol. (*Id.* at p. 4:21-22.) Because Priestly's car was one of the fifth vehicles through the gate, he was selected for the additional administrative search. He was asked to exit his car and open his trunk. (*Id.* at p. 5:3-8). As he did so, Mayes noticed that Priestly was disoriented. (*Id.*) Based on Priestly's disorientation and the smell of alcohol emanating from his person and the car, Mayes determined that the military police should be called to the scene. (*Id.* at p. 9:22-25.)

Military police officer Ricky Kimberlin ("Kimberlin") was the first officer to respond to

Mayes's call. When he made contact with Priestly, Kimberlin could smell a strong odor of alcohol coming from the vehicle. (*Id.* at p. 13:15-21.) In an attempt to corroborate Mayes's observations, Kimberlin administered a simple finger test to Priestly, which is a preliminary sobriety test. (*Id.* at p. 14:7-11.) Although Priestly passed the initial test, Kimberlin removed him from his car in order to conduct a full field sobriety test ("FST"). (*Id.* at p. 14:9-11). Kimberlin could not immediately conduct the FST because his supporting officer, Joseph Riviera ("Riviera"), had yet to arrive. (*Id.* at p. 14:12-18.) While waiting for Riviera, Kimberlin noticed that Priestly's "eyes were glossy, and his pupils looked dilated." (*Id.* at p. 15:1.) Once Riviera arrived, Kimberlin administered the FST to Priestly.

Priestly's FST consisted of three parts. First, Priestly was given the "horizontal gaze nystagmus" ("HGN") test, which involves directing a suspect to follow an object, like a pen, with his eyes so that the administrator can observe his eye movements. (*Id.* at p. 16:6-16.) Priestly failed the HGN test. (*Id.* at pp. 19:4-9, 20:3-5.) Next, the "walk-and-turn" test was administered to Priestly. (*Id.* at p. 20:10-13.) This portion of the FST tests a subject's ability to follow directions and control his body. (*Id.* at p. 21:7-11.) Priestly failed the walk-and-turn test. (*Id.* at p. 23:18-19.) Finally, he was given the "one-legged stand" test. (*Id.* at p. 24:2.) This part of the FST also tests a suspect's ability to follow directions and physical control. (*Id.* at p. 24:3-8.) Priestly failed the one-legged stand test. (*Id.* at p. 25:4-5.) In all, he failed all portions of the FST administered by Kimberlin. (*Id.* at p. 25:17-20.)

After the initial FST was complete, Kimberlin's supervisor, Sergeant Ryan Fitzpatrick ("Fitzpatrick"), arrived on the scene. (*Id.* at pp. 25:25-26:5.) Kimberlin informed Fitzpatrick about the situation, and told him that, because of Priestly's height, there may have been some problem administering the HGN portion of the FST. (*Id.* at p. 26:15-21.) As a result, Fitzpatrick

decided to given Priestly a second FST. (*Id.* at p. 27:12.) Priestly also failed all three parts of the second test. (*Id.* at p. 27:19-20.) After failing both tests, Priestly was detained and taken to a detention center on the base for processing. (*Id.* at pp. 27:23-25.) There, he refused to consent to a breathalyzer test that would have measured his blood alcohol content. (*Id.* at p. 28:6-7.)

**III.**

On appeal, Priestly attacks the sufficiency of the evidence described above on two primary grounds. First, he claims that most of the testimony given by Kimberlin, Riviera, and Fitzpatrick during the trial was not supported by documentary evidence. For example, Kimberlin testified on direct examination that Priestly had glossy eyes but admitted on cross-examination that he never included this observation in the police report he was required to complete regarding the incident. (*Id.* at p. 32:15-17.) Kimberlin also stated on cross-examination that Priestly admitted to consuming alcohol a few hours before the traffic stop, but neither Kimberlin nor Fitzpatrick actually recorded this fact in their reports. (*Id.* at pp. 34:21-35:23.) Finally, Kimberlin's report contains no mention that he smelled an odor of alcohol on Priestly. (*Id.* at pp. 35:24-36:2.) Also along the lines of documentary evidence, Priestly points to the fact that Riviera was unable to produce the police notes he took during the traffic stop. (*Id.* at pp. 53:11-54:5.) Apparently Riviera lost these notes at his home rather than keeping them with the proper file. (*Id.*) Even Fitzpatrick, who was the supervising officer on duty that night, admitted that the paper work coming from his office in this case was sloppy and incomplete. (*Id.* at p. 70:5-19.)

Second, Priestly also attacks his conviction on grounds that there is an alternative and reasonable explanation for why he failed both field sobriety tests: he is uncoordinated. On cross-examination, Kimberlin admitted that Priestly told him prior to administering the first FST that he was uncoordinated. (*Id.* at p. 32:20-21.) Kimberlin also admitted that being uncoordinated

would affect an individual's performance on a sobriety test. (*Id.* at p. 32:22-24.)

**IV.**

Upon review of the record, the Court finds that the evidence was sufficient to sustain Priestly's conviction for driving under the influence. After drawing all reasonable inferences in favor of the prosecution, the Court cannot say that that Priestly's conviction is unsupported by substantial and competent evidence or that the Magistrate Judge's view of the evidence was clearly erroneous.

Kimberlin, Riviera, and Fitzpatrick's testimony at trial contained assertions that were not in their incident reports. The Magistrate Judge acknowledged these deficiencies but did not find that they created a reasonable doubt as to whether Priestly was driving under the influence. As the Magistrate Judge stated when handing down the conviction:

> I do have concerns of sloppy paperwork in this case, and it's something that I've paid a great deal of attention to during the course of this case. I have concerns about that. There was inconsistent testimony, but I find the testimony was consistent on a number of points; that most witnesses smelled alcohol, that [Priestly] failed two sets of field sobriety tests, that he was slurring his words, and there was testimony regarding glossy and dilated eyes. Taking all that evidence as a whole, I find him guilty of DUI.

(*Id.* at p. 82:3-12.) Priestly has not demonstrated that his conviction was based on insufficient evidence. Although he attacks the testimony of Kimberlin, Riviera, and Fitzpatrick, he makes no attempt to discredit Mayes's testimony that Priestly's speech was slurred, he smelled of alcohol, and was disoriented when asked to exit his vehicle. Furthermore, as for the possibility that Priestly failed two sobriety tests because he is uncoordinated, Kimberlin testified that lack of coordination is a common excuse made by many who are stopped at the gates, but that a lack of coordination is not a reason to stop the sobriety tests. (*Id.* at p. 33:6-7.) Moreover, although Kimberlin testified that Priestly gave this explanation prior to the first FST, there is no evidence

that Priestly renewed it prior to the FST administered by Fitzpatrick.

In all, multiple witnesses testified that Priestly smelled of alcohol, had slurred speech, had glassy or bloodshot eyes, and was disoriented. He also failed two field sobriety tests administered by two different officers. Drawing all reasonable inferences in favor of the prosecution, this evidence is sufficient to sustain his conviction for driving under the influence.

## CONCLUSION

Defendant Arvin Priestly appealed his conviction for driving under the influence on grounds that the evidence presented at trial was insufficient to sustain his conviction. For all of the forgoing reasons, **IT IS HEREBY ORDERED** that Priestly’s conviction is **AFFIRMED** and his appeal is hereby **DISMISSED**. The Clerk is instructed to strike this action from the Court's active docket.

Thomas B. Russell, Senior Judge
United States District Court

February 15, 2013